UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA MCEWEN, et al.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>AMANDA BENEDICT, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:20-cv-2364-CAB-LL<br><br>**ORDER GRANTING MOTIONS TO DISMISS [Doc. Nos. 15, 16 and 17]** |

On December 29, 2020, Defendants Amanda Benedict and Audrie Decastro ("Attorney Defendants") filed motions to dismiss the complaint. [Doc. Nos. 15 and 16.] On December 29, 2020, Defendants Shoot for the Moon Sales Consultants, LLC and Dennis Conklin, individually, dba Windermere Cocoa Beach and Walt Disney Realty, and as trustee of Shoot for the Moon DBPP ("SFTM Defendants") also filed a motion to dismiss the complaint. [Doc. No. 17.] On March 1, 2021, Plaintiffs Carla McEwen and Daniel Buzahr ("Plaintiffs") filed an opposition to the motions to dismiss. [Doc. No. 27.] On March 8, 2021, SFTM Defendants and Attorney Defendants filed replies to Plaintiffs' opposition. [Doc. Nos. 34, 35.] On March 9, 2021, Plaintiffs filed a document entitled "Declaration of Ronda McEwen in Support of Plaintiffs' Opposition to Defendants Motion

1

to Dismiss and Motion to Strike." [Doc. No. 36.][1]  The motions are fully briefed, and the Court deems them suitable for submission without oral argument.[2]  For the reasons set forth below, the motions to dismiss are **GRANTED**.

## ALLEGATIONS OF COMPLAINT

Plaintiffs have taken multiple loans secured by their La Jolla property from various lenders, including Shoot for the Moon DBPP ("SFTM"). (Compl., ¶¶ 34, 37, 48.) In 2017, Plaintiffs obtained a loan from SFTM for $100,000.00 (the "2017 Note"). (Compl., ¶ 37.) Plaintiffs paid the 2017 Note in October 2018. (Compl., ¶ 42.) In March 2019, Plaintiffs discovered that SFTM did not record the reconveyance for the Deed of Trust after the 2017 Note was paid. (Comp., ¶ 42, 45.) Plaintiffs admit contacting SFTM "soon after" discovery of this fact "in or about March 2019." (Compl., ¶ 45.)

Thereafter, McEwen alone obtained another loan for $15,000.00 through a promissory note from SFTM in or around April 2019 (the "2019 Note"). (Comp., ¶ 48. Ex. 9.) McEwen issued a Deed of Trust to SFTM securing the 2019 Note on April 25, 2019. (Comp., ¶ 48. Ex. 8.) McEwen defaulted on the 2019 Note in July 2019. More than a year later, SFTM retained the Attorney Defendants to enforce the 2019 Note. (Comp., ¶ 52.)

On July 8, 2020, Mr. de Castro, on behalf of Conklin and SFTM, sent a letter to McEwen demanding payment on the 2019 Note per the terms of the 2019 Note and Deed of Trust prior to foreclosure proceedings. (Compl., ¶ 53. Ex. 12.) Subsequently, McEwen responded directly to Mr. de Castro. (Compl., Ex. 13.) Thereafer, McEwen, and two other law firms, including Plaintiffs' current counsel, engaged with Defendants' counsel with respect to the debt. (Compl., Ex. 13, 15-19.)

---

[1] This document was late and appears to be an attempt at a sur-reply, all which requires leave of Court for filing.  Moreover, the statements made by Plaintiff's counsel lack foundation and are irrelevant.  Nevertheless, the Court has reviewed the document and will allow it to stay in the docket.
[2] Plaintiff's request for oral argument [Doc. No. 27] is **DENIED.**

In response, on July 20, 2020, Mr. de Castro stated "your response letter is without any merit" and they would begin the foreclosure process. (Compl., Ex. 13.) Almost two months later, Defendants, through counsel, began the foreclosure process and filed a Notice of Default as to the 2019 Note on September 3, 2020. (Compl., Ex. 14.) The reconveyance for the 2017 Note was filed with the San Diego County Recorder on November 12, 2020. (See Request for Judicial Notice, Ex. A.)[3]

After several months of correspondence between Plaintiff's counsel and Attorney Defendants (Compl., Exs. 18 and 19), on December 3, 2020, Plaintiffs filed this Complaint with seventeen causes of action against nine defendants.[4]

The Complaint contains three federal causes of action against all defendants: (1) Violation of Truth and Lending Act ("TILA")(15 U.S.C. §1601, et seq.); (2) Home Ownership and Equity Protection Act ("HOEPA")(15 U.S.C. §1639 et sq.); and (3) Fair Debt Collections Practices Act ("FDCPA")(15 U.S.C. §1692). The remaining fourteen causes of action are all state law claims.

## DISCUSSION

A. Legal Standard.

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted"—generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . . more than an unadorned, the defendant-unlawfully-

---

[3] Defendants' Requests for Judicial Notice [Doc. Nos. 15-1 and 16-1] are **GRANTED** pursuant to Fed.R.Evid. 201(b)(2).

[4] On December 10, 2020, Plaintiffs filed an emergency motion for preliminary injunction. [Doc. No. 8.] That motion was denied as moot when defendants rescinded the Notice of Default on December 18, 2020. [Doc. No. 14.]

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the collective facts pled "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557). The Court need not accept as true "legal conclusions" contained in the complaint, id., or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

B. Analysis.

1. TILA and HOEPA.

   a. Statute of Limitations.

Under TILA and HOEPA, the statute of limitations for civil claims for damages is one year. 15 U.S.C. §1640(e); *Kimball v. Flagstar Bank F.S.B.*, 881 F.Supp.2d 1209, 1223 (S.D. Cal. 2012)(because HOEPA is an amendment to TILA, the same statute of limitations periods apply). "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co*., 406 F.Supp.2d 1176, 1183 (D.Or.2005). The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp*., 554 F.Supp.2d 1034, 1039 (C.D.Cal.2008). Here, the Complaint was filed on December 3, 2020, which is more than one year after the closing of the 2019 Note, and more than three years after the closing of the 2017 Note. Therefore, the TILA and HOEPA damages claims are time-barred.

Plaintiffs argue that the limitations period should be suspended under the doctrine of equitable tolling. "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir.2000). The Ninth Circuit has explained:

> Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing. Instead it focuses on whether there was excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing until the plaintiff can gather what information he needs.... However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty.

*Santa Maria*, 202 F.3d at 1178 (citation omitted).

Here, Plaintiffs do not set forth allegations that show despite all due diligence they were unable to obtain vital information bearing on the existence of their claims. *Santa Maria*, 202 F.3d at 1178. Plaintiffs concede that they discovered the issue of the reconveyance "in or about March 2019" and yet still waited more than one year to sue for TILA and HOEPA damages on the 2017 Note. Nothing in the Complaint shows the defendants failed to disclose any material credit terms or other alleged violations on the date the 2019 Note was entered. Therefore, there are insufficient allegations to show that the limitations period regarding damage claims for either Note is extended by equitable tolling.[5]

To the extent that the Complaint pursues a TILA or HOEPA rescission claim, it too is time barred as to the 2017 Note. The statute of limitations begins to run from the date of closing of the transaction. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). The right to rescind expires at the earlier of (1) three years after the date of the transaction, or

---

[5] Plaintiffs also argue the statute of limitations is extended by the "continuing violation" doctrine. [Doc. No. 27 at 18-20.] However, the Ninth Circuit has rejected the application of the continuous violation doctrine in the context of TILA. *See King v. California,* 784 F.2d 910, 914 (9th Cir. 1986).

(2) upon the sale of the property.  15 U.S.C. § 1635(f).  A claim filed more than three years after the consummation of the transaction is absolutely barred. *Miguel v. County Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002)(" § 1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

Plaintiffs however are not time barred from alleging a TILA or HOEPA rescission claim as to the 2019 Note, if they can address the deficiency discussed *infra*.

    b.  Failure to state a claim.

The Complaint fails to state a claim under either TILA and HOEPA, which both define a "creditor" as a person who:

> "(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments, or for which the payment of a finance charge is or may be required; and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence, by agreement."

15 U.S.C.A. §1602(g).

A "creditor" is further defined as follows:

> A person regularly extends consumer credit only if it extended credit (other than credit subject to the requirements of § 1026.32) more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year. If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year.

12 C.F.R. § 1026.2(a)(17(v).

Here Plaintiffs fail to allege that any of the defendants have extended credit more than 25 times, or more than 5 times for transactions secured by a dwelling in the proceeding calendar year.  *Id.* Rather, Plaintiffs merely allege that Defendants "regularly extended consumer credit in the form of mortgage loans that were payable in a balloon amount for which the payment of a finance charge was required."  (Compl. §71.)  In their opposition, Plaintiffs argue that whether defendants are subject to the Acts are "questions of fact" that are subject to further development in discovery.  [Doc. No. 27 at 26-27.]

However, Plaintiffs must satisfy the Rule 8 pleading requirements "before the discovery stage, not after it." *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 & fn. 7 (9th Cir. 2014). Plaintiffs have failed to make the requisite Rule 8 allegations that defendants are "creditors" within the meaning of TILA and HOEPA.[6]  Therefore, the motions to dismiss the first and second causes of action are **GRANTED WITH LEAVE TO AMEND ONLY A RECISSION CLAIM ON THE 2019 NOTE**.

2. FDCPA.

        a. Statute of Limitations.

A claim under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). With respect to the 2017 Note, Plaintiffs admit they discovered in March 2019 that the reconveyance was not recorded, yet they did not file the Complaint until December 2020. Therefore, the claim is time-barred.

        b. Failure to state a claim.

To state a FDCPA claim, a plaintiff must allege facts sufficient to establish: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector," and; (3) the defendant committed some act or omission in violation of the FDCPA. *See Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1113 (N.D. Cal. 2014) (*citing Gomez v. Wells Fargo Home Morg.*, 2011 WL 5834949, at *5 (N.D. Cal. Nov. 21, 2011) ).

Here, Plaintiffs have not sufficiently alleged that defendants are debt collectors. The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In the Complaint, there are no allegations that any of the defendants

---

[6] With regard to the Attorney Defendants, Plaintiffs have also failed to sufficiently allege that they are "agents" within the meaning of 12 C.F.R. §1026.36(a), as there is no allegation that the Attorney Defendants were involved in the initial negotiation of the loan terms.

"regularly" collected "debts owed to another." *Id.* Second, Plaintiff has not sufficiently alleged that debt collection is at issue. The allegations in the Complaint involve defendants' alleged activities in nonjudicial foreclosure proceedings. However, the activity of nonjudicially foreclosing on property under a deed of trust is not the collection of a "debt" under the FDCPA. *See Obduskey v. McCarthy & Holthus LLP*, __ US __ , 139 S.Ct. 1029, 1037 (2019) —law firm engaged in nonjudicial foreclosure proceedings was simply enforcing security interest and not acting as debt collector; *Ho v. ReconTrust Co., NA*, 858 F3d 568, 571, 575 & fn. 11(9th Cir. 2017) —actions by trustee of deed of trust to facilitate nonjudicial foreclosure (sending notice of default and notice of sale) are not attempts to collect "debt" by "debt collector" under FDCPA. Given that this situation is clearly not encompassed by the FDCPA, the motions to dismiss the FDCPA claim are **GRANTED WITHOUT LEAVE TO AMEND.**

3. Defendant CNA.

Defendant CNA filed an answer to the complaint. [Doc. No. 25.] However, the Complaint fails to state any federal claims against CNA for the reasons set forth above. This Court has discretion to dismiss CNA, a nonmoving defendant, because its position is similar to that of the moving defendants, and all defendants' claims are integrally related. *Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 743 (9th Cir. 2008)(dismissal appropriate where remaining defendants' position was similar and "further amendment would be futile"). Therefore, the first and second causes of action are **DISMISSED WITH LEAVE TO AMEND ONLY A RECISSION CLAIM ON THE 2019 NOTE**, and the third cause of action is **DISMISSED WITHOUT LEAVE TO AMEND**, as to defendant CNA.

4. Supplemental Jurisdiction.

Federal courts have the discretion to exercise supplemental jurisdiction over all claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if supplemental jurisdiction exists, however,

district courts may decline to exercise supplemental jurisdiction over a claim if: (1) it raises a novel or complex issue of state law; (2) it substantially predominates over the claim(s) over which the court has original jurisdiction; (3) the court has dismissed all claims over which it has original jurisdiction; or (4) there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).  The Supreme Court has identified additional factors that district courts should consider when deciding whether to exercise supplemental jurisdiction, "including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

"While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the *Gibbs*[7] values 'of economy, convenience, fairness, and comity.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citations omitted).  A district court need not "articulate why the circumstances of [the] case are exceptional" to dismiss state-law claims pursuant to 28 U.S.C. section 1367(c)(1)-(3). *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478–79 (9th Cir. 1998) (citation omitted).

Here, only three out of the seventeen claims are federal claims.  As set forth above, at this time, the Complaint does not state any federal claims.  Even if Plaintiffs are able to amend to state TILA or HOEPA claims for recission on the 2019 Note, any alleged violations under TILA or HOEPA relate to a much narrower set of facts than the activities alleged in the state law claims.  Accordingly, the Court **DECLINES SUPPLEMENTAL JUSISDICTION** as to the remaining state law claims against all defendants.[8]

DIVERSITY JURISDICTION

In the Complaint, Plaintiff alleges federal jurisdiction based on diversity pursuant to 29 U.S.C. §1332.  [Doc. No. 1 at ¶29.]  However, Plaintiff also acknowledges in the

---

[7] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).
[8] As a result, the Court does not address the motions to dismiss as to the state law claims.

Complaint that three of the defendants -- Amanda Benedict, Audie DeCastro, and CNA Foreclosure Services, Inc. -- are residents/citizens of California. [Doc. No. 1 at ¶¶19, 20 and 27.]  "The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between ... citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (quoting 28 U.S.C. § 1332(a)(1)). This statutory formulation requires "complete diversity of citizenship," meaning "the citizenship of each plaintiff [must be] diverse from the citizenship of each defendant." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Lincoln Prop. Co.*, 546 U.S. at 89. Given that there is not complete diversity, there is no basis for diversity jurisdiction.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss as to the first and second causes of action are **GRANTED WITH LEAVE TO AMEND ONLY A RECISSION CLAIM ON THE 2019 NOTE**; the motions to dismiss the third cause of action are **GRANTED WITHOUT LEAVE TO AMEND**.  The remaining state law causes of actions are **DISMISSED WITHOUT PREJUDICE** to being refiled in state court.  The claims against Defendant CNA are also **DISMISSED** under the same terms.

Plaintiff may file a First Amended Complaint, stating only a recission claim on the 2019 Note under TILA and/or HOEPA, by **May 14, 2021**.  If no FAC is filed by that date, then the case will be **CLOSED** without further court order.

**IT IS SO ORDERED**.

Dated:  April 16, 2021

Hon. Cathy Ann Bencivengo
United States District Judge